IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL T. SEFERROCHE f/k/a MICHAEL T. ROCHE, <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF EDUCATION OF THE CITY OF CHICAGO, CHICAGO PUBLIC SCHOOLS, a Municipal Corporation, <br><br> Defendant. | No. 10 C 5338 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Michael Seferroche brings this action against his former employer, the Chicago Public Schools ("CPS"). He alleges that CPS discriminated against him on the basis of his race (Caucasian) and national origin (Irish and Polish ancestry) when it declined to reinstate him as a special education teacher's aid, even though CPS policy required that he be reinstated. CPS now moves for summary judgment, arguing that (1) Seferroche's Counts I and II are time-barred; (2) Seferroche cannot establish municipal liability under *Monell* for his Section 1981 claim in Count III; and (3) Seferroche lacks factual support for his discrimination claim. For the reasons stated below the court grants defendant's motion in its entirety.

BACKGROUND

The following facts are undisputed unless otherwise indicated.

In the spring of 2008, Michael Seferroche began working for CPS as a special education classroom assistant at Von Stuben Metropolitan Science Center. (Def. Rule 56.1(a)(3) Statement

(hereinafter "Def. St.") ¶ 1.) He spent the majority of his time working as a dedicated aide to student "JM," who has Aspergers Syndrome. (Pl. Rule 56.1(b)(3) Statement (hereinafter "Pl. St.") ¶ 2.)

In June 2009, the school was forced to eliminate a special education classroom assistant position due to decreased student enrollment. (Def. St. ¶ 7.) Because Seferroche was the least senior employee holding that position, he was laid off effective August 31, 2009. (*Id*.) At the time of the lay off, school principal Pedro Alonso told Seferroche that if the position re-opened, he would re-hire Seferroche. (Pl. St. ¶ 3.) Around that time, Principal Alonso also signed a letter of recommendation for Seferroche stating, in part, that Seferroche was "the most proficient instructional aide in our school" and that he would "emphatically recommend Michael as an asset to any teaching staff." (Pl. St. ¶ 4.)

In October 2009, the school reopened the special education classroom assistant position that Seferroche previously occupied. (Pl. St. ¶ 5.) At that time, JM's mother, Elizabeth, requested that Seferroche be reinstated because her son had responded well to him. (Pl. St. ¶ 8.) Either Principal Alonso or Assistant Principal Harold Hale told Elizabeth that they were required to open up the position for interviewing, and could not simply reinstate Seferroche. (Pl. St. ¶ 9.)

Principal Alonso formed a team to interview candidates and make recommendations for the newly opened position. (Def. St. ¶¶ 11-12.) That team included Assistant Principal Hale, Counseling Department Chair Yvette Laboy, and Case Manager for special education, Julienne Ricker. (*Id*.) Principal Alonso specifically requested that the team invite Seferroche to interview for the position. (Def. St. ¶ 10.) The team interviewed Seferroche and at least one other candidate, Eliot Velazquez. (Def. St. ¶ 15.) The interview team unanimously recommended that Velazquez be hired for the job; and CPS hired him. (Def. St. ¶ 20.) The parties vigorously dispute whether

Velazquez was as qualified for the job as Seferroche.

On December 7, 2009, Seferroche filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") arising out of CPS's failure to reinstate him. (Def. St. ¶ 31.) Seferroche received a Notice of Right to Sue from the EEOC by certified mail on January 4, 2010. (Def. St. ¶ 32.) Seferroche was aware that he had 90 days from the date he received the notice (until April 4, 2010) to file his lawsuit, but he did not file within that timeframe. (Def. St. ¶ 33.)

Sometime between October 2009 and January 2010, CPS learned that Von Stuben had hired Velazquez instead of Seferroche. (Def. St. ¶ 25.) CPS's Human Resources department informed the administration at Von Stuben that the hire violated CPS's layoff policy, which provides that if a CPS school opens a bargaining unit position in the same job title from which a CPS employee was laid off within the past 10 months, the school must offer to re-staff that employee to the position. (Def. St. ¶ 8.) CPS directed the administration at Von Stuben to fire Velazquez and reinstate Seferroche. (Def. St. ¶ 26.)

In January 2010, Seferroche heard from his former student JM's service provider, Carol Lynn Chmielewski, that Von Stuben was going to reinstate him and that he could expect to receive a reinstatement letter. (Pl. St. ¶ 50.) In February 2010, Chmielewski again told Seferroche that he could expect to receive a reinstatement letter. (Pl. St. ¶ 51.) On April 20, 2010, having not received the reinstatement letter, Seferroche went to CPS's Human Resources department where he asked to see a copy of the reinstatement letter. (Pl. St. ¶ 53.) CPS supervisory/managerial employee Mark Harris showed Seferroche a copy of the letter and stated that he would mail a copy to Seferroche. (Pl. St. ¶ 54.) On April 29, 2010, Harris sent Seferroche an email with an attached letter, but the

3

letter was not the reinstatement letter. (Pl. St. ¶ 55.) It was instead a letter dated August 3, 2009 concerning Seferroche's original layoff. (*Id.*) For the next three months, Seferroche made repeated efforts to obtain information about his reinstatement. (Pl. St. ¶¶ 57-68.) He contacted his union representative, submitted a grievance letter with Human Resources, made numerous inquiries, and submitted a FOIA request. (*Id.*) Those efforts were unavailing. CPS never reinstated Seferroche.

The parties dispute the reason that CPS never reinstated Seferroche. Although CPS concedes that its own policy mandated that Seferroche be reinstated and that Human Resources directed the school to reinstate Seferroche, it contends that it never reinstated him because the position was again eliminated. (Def. St. ¶ 29.) Seferroche contends that CPS's failure to reinstate him was discriminatory.

Seferroche filed his complaint in this case on August 24, 2010. In November 2010, CPS paid Seferroche approximately $8,475 as back pay for the period between the Velazquez hire and the elimination of the classroom assistant position. (Pl. St. ¶ 69.)

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether factual issues exist, the court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009).

4

Rule 56 mandates, however, that the party opposing a motion for summary judgment may not rest on the pleadings or mere speculation. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). It must instead affirmatively demonstrate, through the presentation of admissible evidence, that there is a genuine issue of material fact to be resolved at trial. *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010). If there is a genuine dispute as to a material fact, the court must view the relevant evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010).

## ANALYSIS

Seferroche claims that CPS's failure to reinstate him as a special education classroom aid was unlawful discrimination that violated Title VII and Section 1981 of the Civil Rights Act of 1866. CPS has moved for summary judgment on all of Seferroche's claims. It argues that (1) Seferroche's Counts I and II are time-barred; (2) Seferroche cannot establish municipal liability under *Monell* for his Section 1981 claim in Count III; and (3) Seferroche lacks factual support for his discrimination claim. The court addresses each of those arguments in turn.

1. Timeliness of Title VII claims (Counts I and II)

CPS first argues that Seferroche's Title VII claims are untimely. Under Title VII, a plaintiff is required to bring suit within 90 days of the date he received his right to sue letter from the EEOC. 42 U.S.C.A. § 2000e-5; *Jones v. Madison Serv. Corp.,* 744 F.2d 1309, 1312 (7th Cir. 1984). In this case, Seferroche received his right to sue letter on January 4, 2010, but did not file his complaint until August 24, 2010, more than seven months later.

5

Seferroche argues that this court should equitably toll the 90-day limitations period. Equitable tolling allows a plaintiff to avoid the bar of the 90-day limitations period if, despite all due diligence, he either failed to file because he was unable to obtain vital information bearing on the existence of his claim or made some good faith error in making his filing (*e.g.*, brought suit in the wrong court). *Threadgill v. Moore USA, Inc.*, 269 F.3d 848, 850 (7th Cir. 2001). An essential element of equitable tolling is that the plaintiff acted reasonably. *Shropshear v. Corp. Counsel of City of Chicago,* 275 F.3d 593, 595 (7th Cir. 2001). The Seventh Circuit has repeatedly emphasized that "the applicability of equitable tolling turns on whether a reasonable person would be aware of the 'possibility' of a claim." *Hentosh v. Herman M. Finch Univ. of Health Sci.*, 167 F.3d 1170, 1175 (7th Cir. 1990) (quoting *Cada v. Baxter Healthcare Corp.* 920 F.2d 446, 451 (7th Cir. 1990)).

In this case, Seferroche claims the court should toll the limitation period because he reasonably believed that CPS was going to revisit its decision not to reinstate him, and, while he sought information about that reinstatement, he lacked vital information bearing on the existence of his claim. In support of that argument Seferroche relies on non-binding opinions in *Coke v. Gen. Adjustment Bureau, Inc.* 616 F.2d 785 (5th Cir. 1980) and *Cocke v. Merrill Lynch & Co.,* 817 F.2d 1559 (11th Cir. 1987). In *Coke,* the plaintiff alleged that his employer demoted him in favor of a younger worker, in violation of the Age Discrimination in Employment Act. The plaintiff sought reinstatement and was told by his employer that corrective action to undo the demotion was underway. In the meantime, the plaintiff's 180-day maximum period to file a notice of intent to sue with the Department of Labor lapsed. The district court entered summary judgment for defendant, and the circuit court reversed, holding that the 180-day period should be tolled until the plaintiff discovered that the employer had no intention of reinstating him. Similarly, in *Cocke,* the Eleventh

6

Circuit reversed summary judgment for the defendant, finding a triable issue of fact as to whether the 180-day ADEA filing period should be equitably tolled. There, the plaintiff was roughly four months late in filing his age discrimination charge with the EEOC. He argued that he did not file on time because the defendant told him it was trying to find him a suitable alternate position. In reversing summary judgment, the circuit court reasoned that it would simply be unreasonable to expect a plaintiff to file suit against a company he reasonably believes is trying to find him work. *Id*. at 1561-62.

Although the court agrees that there are certain factual parallels between the above cases and this case, *Coke* and *Cocke* are ultimately unpersuasive because the Seventh Circuit has adopted a more restrictive approach to equitable tolling where an employer makes a discriminatory decision and then appears willing to revisit that decision. In *Lever v. Northwestern Univ.,* 979 F.2d 552 (7th Cir. 1992), the appellate court addressed head-on the contention that an employer's reconsideration of discriminatory action deprives plaintiff of vital information bearing on the existence of a claim. There, a female professor had been denied tenure and appealed to the dean for reconsideration of that denial. The dean said that he would reconsider if the professor submitted a manuscript of in-progress scholarship. She submitted the manuscript, but the dean adhered to his prior denial of tenure. The professor then filed a charge of discrimination with the EEOC, alleging that Northwestern had discriminated against her on the basis of her gender, and she later brought suit in federal court. The district court dismissed the case as untimely, because the professor failed to file her charge of discrimination within 300 days of the discriminatory act. On appeal, the professor argued, among other things, that the 300-day time limitation was equitably tolled during the dean's reconsideration of the tenure denial. The appellate court affirmed, reasoning as follows:

7

> Equitable tolling … comes into play if despite all due diligence the employee is unable to obtain vital information bearing on the existence of a claim. Nothing in Northwestern's avenues of redress kept vital information out of Lever's hands; if the Dean's decision is best explained by her sex rather than her scholarship, that was equally apparent on May 5, 1980 [the date of the initial denial] as January 15, 1981 [the date of the final denial].

*Id.* at 556 (internal quotations and citations omitted).

Thus, if a plaintiff has sufficient information (if not complete information) to conclude that he has a claim within the statutory period, equitable tolling cannot be used to extend that period. *See also Jackson v. Rockford Hous. Auth.,* 213 F.3d 389, 396-97 (7th Cir. 2000) (equitable tolling unavailable where plaintiff was put on notice of potential age discrimination as soon as he met younger, less qualified replacement).

In this case, Seferroche filed a charge of discrimination with the EEOC shortly after CPS initially denied reinstatement, but then waited beyond the statutory period to file his complaint in court. Seferroche's prompt filing of his charge of discrimination is significant because it plainly indicates that he was on notice of his claim when CPS hired Velazquez. Indeed, Seferroche concedes that point, but argues that he was still without "vital information bearing on the notice of his claim" because, "if Defendant made him whole [by reversing its initial decision not to reinstate him], he would have no claim." (Resp. at 12.) The problem with that argument is that it ignores the Seventh Circuit precedent discussed above indicating that an employer's potential reversal of a discriminatory decision does not deprive a plaintiff of vital information bearing on his notice of a claim. Moreover, if the court were to adopt Seferroche's argument, Title VII plaintiffs in receipt of their right to sue letters could subvert the 90-day filing deadline by simply alleging that their employers' discriminatory decisions were open to reconsideration.

Statutes of limitations serve the important purpose of encouraging prompt claim filing, which

improves the accuracy of judicial determinations and defrays the debilitation that accompanies uncertain legal liability. *Galloway v. General Motors Service Parts Operations,* 78 F.3d 1164, 1165 (7th Cir. 1996). For that reason, courts must recognize and apply statutes of limitations rigorously and without reservations. *Shanoff v. Illinois Dep't of Human Serv.,* 258 F.3d 696, 703 (7th Cir. 2001). Accordingly, this court declines to equitably toll the 90-day limitations period, and awards summary judgment in CPS's favor on Seferroche's Title VII claims (Count I and II). Because the court finds that Seferroche's Title VII claims are untimely, it need not address CPS's argument that Seferroche lacks factual support for those claims.

2. <u>Section 1981 Claim (Count III)</u>

Aside from his Title VII claims, Seferroche also alleges that CPS's failure to reinstate him violated Section 1981 of the Civil Rights Act of 1866. Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. To prevail under Section 1981, Seferroche must demonstrate that the violation of his right to make contracts was caused by an official CPS custom or policy within the meaning of *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 694 (1978). *Looper Maintenance Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999). An official custom or policy can take one of three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994) (citations omitted).

In this case, Seferroche argues that CPS violated Section 1981 when it learned that Principal Alonso had violated the reinstatement policy and then failed to "ensure Alonso understands and agrees to abide by their nondiscrimination policy," which effectively gave him the "green light" to continue his discriminatory behavior. This is, essentially, a failure to train argument. A plaintiff may state a claim against a municipality "if the employee has not been adequately trained and the constitutional wrong has been caused by that failure to train." *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). However, the liability attaches only "where the failure to train amounts to deliberate indifference." *Id.* Deliberate indifference must be shown by either proof of a (1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeat complaints of constitutional violations. *Sornberger v. City of Knoxville,* 434 F.3d 1006, 1029-30 (7th Cir. 2006).

In this case, although Seferroche claims that CPS failed to ensure Alonso's adherence to the anti-discrimination policy, he fails to provide any factual support for that claim. Instead, the record indicates only that CPS's human resources department directed Alonso to fire Velazquez, reinstate Seferroche, and give Seferroche back-pay for the time he should have been working at the school before the position was then eliminated. The court can hardly conclude that CPS was deliberately indifferent in its failure to train from those facts alone. Even if Seferroche had shown that CPS failed to train Alonso, there is no evidence that the failure to provide adequate training was in light of foreseeable consequences or that it was a failure to act in response to repeat complaints of constitutional violations. Under *Monell,* the burden is on the plaintiff to demonstrate the essential policy or custom. *Smith v. Chicago School Reform Bd. of Trustees,* 165 F.3d 1142 (7th Cir. 1999). Because Seferroche has failed to meet that burden, CPS is entitled to summary judgment.

## CONCLUSION

For the above reasons, the court grants CPS's motion for summary judgment in its entirety.

                                ENTER:

                                _____
                                JAMES F. HOLDERMAN
                                 Chief Judge, United States District Court

Date: June 5, 2012